ORIGINAL

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

MAY 12 2003

PAK-TEC, INC.
A North Carolina Corporation,      )
                                    )
        Plaintiff,                  )
                                    )
v.                                  )
                                    )   Civil Action No.:
                                    )   1:03-CV-1249-TWT
IMAJE INK JET PRINTING              )
CORPORATION n/k/a IMAJE USA,        )
a Georgia Corporation;              )
IMAJE S.A., a French                )
Corporation,                        )
                                    )
        Defendants.                 )
_____    )

### DEFENDANTS' MEMORANDUM OF LAW IN RESPONSE TO PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

#### I.    INTRODUCTION

Plaintiff Pak-Tec Corporation ("Pak-Tec" or "Plaintiff") seeks to enjoin Defendant Imaje Ink Jet Printing Corporation ("Image USA")[1] by requiring Imaje USA to begin doing business with Pak-Tec again pursuant to the terms of an expired July 22, 1991 Distribution Agreement between the parties ("1991 Agreement"). Because (a) the 1991 Agreement has expired, (b) Pak-Tec has failed to object to the termination of the parties'

---

[1]    Pak-Tec seeks an injunction solely against Imaje USA and not against its co-defendant Imaje S.A. ("Imaje France"). Because the Court has no jurisdiction over Imaje France, a French citizen, Imaje France will file a separate motion to dismiss this action against it.

7

at-will relationship for over two months, (c) Imaje USA has,
with Pak-Tec's knowledge, expended significant resources
developing a new distribution system for its products, (d) any
injunction would require unwieldy supervision by the Court and
(e) Pak-Tec cannot clearly prove any element of the Eleventh
Circuit's four part test for preliminary injunctions, Pak-Tec's
Motion for Temporary Restraining Order and Preliminary
Injunction should be denied.

## II.    STATEMENT OF RELEVANT FACTS

### A.    The July 22, 1991 Agreement Terminated In 1996

On July 22, 1991, Defendant Imaje USA and Pak-Tec entered
into the 1991 Agreement. <u>See</u> Exhibit "D" to Plaintiff's
Complaint.[2]  The 1991 Agreement was executed by Pak-Tec President
Russ Davey. <u>See</u> <u>id</u>. at p.10.  Plaintiff's Motion for Temporary
Restraining Order and Preliminary Injunction seeks the continued
enforcement of the 1991 Agreement.  However, by its own terms
the 1991 Agreement terminated, at the latest, in 1996.

Paragraph 19 of the 1991 Agreement provides:

The term of [the] Agreement shall be extended, under
the same terms and conditions, each time the Exhibit D
"Quota" is met, for three years following the year in
which the "Quota" is met.

---

[2]    As Plaintiff admits, the 1991 Agreement superceded a July
1, 1987 Agreement between the parties. <u>See</u> Complaint at ¶
26 ("The 1991 Agreement, <i>as of the date of this filing</i>,
remains in full force and effect and is the current
contract detailing the contractual relationship between
Imaje USA and Pak-Tec.").

Exhibit D to the 1991 Agreement provides "quotas" for the years 1991, 1992, and 1993. See 1991 Agreement at Exhibit D. Based on this provision, at the latest, the 1991 Agreement could be extended through 1996.  See March 6, 2003 Letter from Imaje USA General Manager Jacques Desroches to Pak-Tec President Russ Davey ("March 6, 2003 Letter"), attached to Plaintiff's Complaint as Exhibit F.  Following 1996, therefore, the parties' business relationship became at-will.  See id.

There was no written, executed extension of the 1991 Agreement's terms to cover the at-will relationship.  Paragraph 20 of the Agreement provides:

> This Agreement and attached exhibits contain the entire understanding of the parties hereto with respect to the subject matter contained herein.  **The parties may modify, vary or alter the provisions of this Agreement only by an instrument in writing duly executed by an authorized representative of both parties.**

No such modification duly executed by an authorized representative of both parties has ever been made.  Accordingly, the 1991 Agreement has expired.

Plaintiff claims that Exhibit E to Pak-Tec's Complaint contains an email from Imaje USA that evidences a continuation of the 1991 Agreement.  However, given the requirements of Paragraph 20 for modifying the agreement, this email did not and cannot modify the 1991 Agreement.

3

**B.    On March 5, 2003, Imaje USA Notified Pak-Tec That
Their Relationship Would Terminate**

On March 5, 2003, Imaje USA notified Pak-Tec by telephone
that Imaje USA would terminate its at-will relationship with
Pak-Tec.  See Complaint ¶ 44.  On March 6, 2003, Imaje USA wrote
Plaintiff by e-mail, Federal Express, and certified mail to
confirm its plan to terminate Imaje USA's at-will relationship
with Pak-Tec.  See Ex. F to Complaint (March 6, 2003 termination
letter).  Rather than terminating the relationship immediately,
as it could have done, Imaje USA informed Pak-Tec that their
relationship would terminate on May 6, 2003. See Ex. F to
Complaint.  Imaje USA provided a sixty day "phase out" period,
in part, to allow Pak-Tec an opportunity "to moderate any impact
this may have on [Pak-Tec's] business."  See Ex. F to Complaint.

In its March 26, 2003 letter, Imaje USA further explained
that it was terminating its relationship with Pak-Tec because
the relationship was initially based on Pak-Tec's exclusive
right to distribute certain products specifically described in
Exhibit A to the 1991 Agreement.  See id.; see also 1991
Agreement at ¶ 1 ("IMAJE appoints the Distributor to serve as an
exclusive distributor of those IMAJE products described in
Exhibit A attached hereto").  Imaje USA has discontinued selling
the products described in Exhibit A, which are over ten years
old.  See Ex. F to Plaintiff's Complaint (March 6, 2003 letter),

4

at 2.  Imaje USA now intends to focus its efforts on selling new

products that are not defined in the Agreement.  See id.

     C.    **From March 5, 2003 through April 30, 2003 Pak-Tec Did**
         **Not Object To The Termination Of The At-Will**
         **Relationship While Imaje USA Expended $182,000.00**
         **Preparing For The Transition**

From March 5, 2003 through April 30, 2003, Pak-Tec voiced

no objection to Imaje USA's termination of the parties' at-will

relationship, thus ratifying the termination.  Pak-Tec voiced no

objection even though Imaje USA specifically notified Pak-Tec of

its plan to "assemble and organize the necessary assets and

resources to effectively administer and serve the territory."

See Ex. F to Verified Complaint, at 1.

As part of its efforts "to assemble and organize the

necessary assets and resources to effectively administer and

serve the new territory," from March 12, 2003 through the

present, Imaje USA (a) interviewed prospective new employees,

(b) hired new salespersons and technicians, (c) conducted office

and field training for new salespersons and technicians, (d)

conducted new product training, (e) ran advertisements for new

personnel, (g) leased a car for new technician, (h) stocked up

on new inventory, and (f) notified customers that it would be

marketing its products directly.  See Affidavit of Steve

Wakeford at ¶ 5 attached hereto as Exhibit "A"; Ex. H to

Complaint.  In so doing, Imaje USA has spent approximately

$182,000.00.  See Affidavit of Wakeford at ¶ 6.  Since May 6, 2003 (the effective termination date), Imaje USA has taken new customer orders that it is now obligated to fill.  See Affidavit of Wakeford at ¶ 7.

## D.   Pak-Tec Inappropriately An Filed Action In North Carolina On April 30, 2003

On April 30, 2003, six days prior to the May 6, 2003 termination date and fifty-six days after notification of the termination, Pak-Tec, **for the first time**, notified Imaje USA that it objected to the dissolution of the Pak-Tec/Imaje USA relationship.  Pak-Tec did so by filing a Motion for Temporary Restraining Order and Preliminary Injunction in the United States District Court for the Western District of North Carolina seeking to force Imaje USA to continue doing business with Plaintiff pursuant to the 1991 Agreement.  The Honorable Richard L. Voorhees scheduled a hearing regarding Pak-Tec's motion for Monday, May 5, 2003—the day before the Pak-Tec/Imaje relationship officially terminated.

At this hearing, Judge Voorhees found that the 1991 Agreement's forum selection clause divested him of jurisdiction to resolve Pak-Tec's dispute.²  Because the

---

²      Pak-Tec, seeking to enforce the 1991 Agreement, breached
       that agreement by failing to file their action in a Georgia
       pursuant to Paragraph 22 of the 1991 Agreement.  This
       paragraph provides:

Western District of North Carolina lacked subject matter
jurisdiction to hear the matter, Judge Voorhees dismissed
Pak-Tec's action in its entirety.

On May 8, 2003, two days **after** the Pak-Tec/Imaje
relationship officially terminated, Plaintiff filed a
Complaint and Motion for Temporary Restraining Order and
Preliminary Injunction in this Court.

### III.  <u>ARGUMENT AND CITATION OF AUTHORITY</u>

**A.    <u>This Court Does Not Have Jurisdiction Because
Plaintiff's Motion Is Moot:  The Action Plaintiff
Seeks to Enjoin Has Already Occurred</u>**

"It is a rather fundamental rule of [] equitable
jurisprudence . . . that if the thing sought to be enjoined in

---

> This Agreement shall be construed and interpreted
> in accordance with the law of the State of
> Georgia.  Any dispute between the parties shall
> be brought to the jurisdiction of the courts of
> the State of the Defendant and each party hereby
> acknowledges personal jurisdiction to the Courts
> of that state.

Because Imaje USA is Georgia resident, and Imaje France is
a French resident, the Western District of North Carolina
had no jurisdiction over the action.  Pak-Tec has offered
no excuse for filing this action in the inappropriate
forum.  However, it appears that Pak-Tec was attempting to
forum shop and take advantage of a more liberal preliminary
injunction standard in the Fourth Circuit that is not
recognized by the Eleventh Circuit. Compare <u>Hatian Refugee
Center, Inc. v. Christopher</u>, 43 F.3d 1431, 1432 (11th Cir.
1995) (no injunction if no success on merits) <u>with</u>
<u>Blackwelder Furniture Co. v. Selig Manufacturing Co.</u>, 550
F.2d 189, 196 (4th Cir. 1977) (success on merits less
important); <u>see</u> Plaintiff's North Carolina Brief at 6-7, 17
attached to Plaintiff's Brief as Ex. C (relying on

fact takes place, the grant or denial of the injunction becomes moot." Jackson v. Bibb County School District, 271 Ga. 18, 19, 515 S.E.2d 151, 152 (1999); see also Sierra Club v. Peterson, 228 F.3d 559, 566 n.11 (5th Cir. 2000) ("Where the activities sought to be enjoined have already substantially occurred, and the . . . court cannot undo what has already been done, the action is moot."); Knaust v. City of Kingston, New York, 157 F.3d 86, 88 (2d Cir. 1998) (holding that "an appeal from the denial of a preliminary injunction is mooted by the occurrence of the action sought to be enjoined"); CMM Cable Rep., Inc. v. Ocean Coast Properties, Inc., 48 F.3d 618, 621 (1st Cir. 1995) (refusing to enjoin "event that has already fully occurred"); Tropicana Products Sales, Inc., 874 F.2d at 1581, 1582-83 (11th Cir. 1989) (denying injunction to prevent distributor from allegedly breaching the parties' distribution contract because requested end-date of injunction passed before parties' appeal was heard); Florida Wildlife Federation v. Goldschmidt, 611 F.2d 547, 549 (5th Cir. 1980) (denying plaintiffs' motion for injunctive relief because events to be enjoined had substantially occurred).

The parties' relationship terminated on May 6, 2003, and the 1991 Agreement that Pak-Tec seeks to enforce terminated in 1996. Accordingly, the act that Pak-Tec seeks to enjoin has

Blackwelder).

already occurred.  Moreover, the status quo in this matter
cannot be restored given, among other things, (a) Imaje USA's
efforts incurred in developing and implementing the new
distribution system over the past two months, (b) the
$182,000.00 in non-recoverable expenses Imaje USA has incurred
in this effort, and (c) Imaje USA's obligation to fulfill new
customer orders.  Because the parties' relationship has already
occurred and because the Court cannot feasibly return the
parties to the status quo, it should deny Pak-Tec's motion.

**B.    Pak-Tec Is Estopped From Seeking Injunction**

As Pak-Tec admits, Imaje USA informed Pak-Tec on March 5,
2003 that Imaje USA would terminate its relationship with Pak-
Tec on May 6, 2003.  See Verified Complaint at ¶¶ 43-47 and
Exhibit F.  The March 6, 2003 letter stated that the purpose of
the sixty-day "phase out" period of the parties' relationship
was as follows:

> We are hopeful that this phase out of the relationship
> will allow you to moderate any impact this may have
> your business and, at the same time will allow for us
> to engage in a smooth and cooperative transitioning of
> the territory to Imaje.  **The phase out period will
> also allow Imaje to assemble and organize the
> necessary assets and resources to effectively
> administer and serve the territory.**

Complaint at Exhibit F (emphasis added).

Accordingly, Pak-Tec knew on March 6, 2003 that Imaje USA
would "assemble and organize the necessary assets and resources

9

to effectively administer and serve the territory." See Ex. F
to Verified Complaint, at 1.  Rather than bring suit
immediately, or even inform Imaje USA of its intent to bring
suit, Plaintiff waited two months to bring this action and seek
a preliminary injunction, even though Pak-Tec knew that Imaje
USA was expending significant monies ($182,000.00) "to
effectively administer and serve the territory at issue."  This
delay strongly militates against the entry of a preliminary
injunction.

    Courts have consistently denied injunctive relief where a
plaintiff has unreasonably delayed in filing for injunctive or
other temporary equitable relief.  See Boire v. Pilot Freight
Carriers, Inc., 515 F.2d 1185, 1193 (5th Cir. 1975) (denying
temporary equitable relief because moving party waited three
months to file for such relief); Seiko Kabushiki Kaisha v. Swiss
Watch International, Inc., 188 F. Supp. 2d 1350, 1356 (S.D. Fla.
2002) (denying injunction where plaintiff waited three months
after its last cease and desist communication with defendant to
file action because "Plaintiff's delay in filing this action
undercuts any sense of urgency and demonstrates that a
preliminary injunction is not warranted"); Miller v. Board of
Commissioners, 45 F. Supp. 2d 1369, 1374-75 (M.D. Ga. 1998);
Daly v. Leake, No. 5:97-CV-750-BO(3), 1998 U.S. Dist LEXIS 8114
at *6 (W.D.N.C. April 27, 1998).

Moreover, equity courts will not issue an injunction when the plaintiff seeking it sleeps on his rights while watching a defendant incur great expense on the project that the plaintiff seeks to enjoin.  See Burton v. East Point Motors, Inc., 209 Ga. 872, 874 (1953) (refusing to issue an injunction against construction of automobile salesroom in residential area where plaintiffs knew that dealership was being built, yet watched for eight months as defendant incurred substantial costs constructing the salesroom).  This is because "[e]quity favors the vigilant and does not extend its aid to the negligent or sleepy."  Id.   In short, "[e]quity must have regard to the respective diligence of the parties and will not relieve one whose negligence or delay have placed it beyond the power of the court to extend him aid except at the expense of the one who has been diligent.  To do so would be unjust and inequitable."  Id.

In this case, given (a) Pak-Tec's two month delay in seeking relief, and (b) Pak-Tec's knowledge that Imaje USA was expending resources to prepare and serve the territory and customers, Pak-Tec's motion should be denied.

## C.   Court Should Not Force Defendants To Remain In Their Contractual Relationship With Plaintiff

It would be improper to award any injunctive relief in this contract action, whether preliminary or permanent, given the complex nature of the parties' relationship and the continual

court supervision that such an injunction would require.  This
principle is well founded.  In Texas and Pacific Railway Co. v.
Marshall, 136 U.S. 393 (1890), the Supreme Court refused to
issue the injunction because of the immense and continuing
burden that such specific performance would place on the federal
court:

> If the court had rendered a decree restoring all the
> offices . . . [to Marshall], it must necessarily
> superintend the execution of this decree.  It must be
> making constant inquiry as to whether every one of
> the subjects of the contract which have been removed
> have been restored.  It must consider whether this
> has been done perfectly and in good faith, or only in
> an evasive manner. It must be liable to perpetual
> calls in the future for like enforcement of the
> contract, and it assumes, in this way, an endless
> duty, inappropriate to the functions of the court,
> which is as ill-calculated to do this as it is to
> supervise and enforce a contract for building a house
> or building a railroad, both of which have in this
> country been declared to be outside of its proper
> functions, and not within its powers of specific
> performance.

Id. at 406 (emphasis supplied); see also, Corenswet, Inc. v.
Amana Refrigeration, Inc., 594 F.2d 129, 133-34, and n.3 (5th
Cir. 1979) (eschewing court's supervisory role over contractual
relationship and noting that "Difficulty of enforcement is, in
itself, often a sufficient reason for denying injunctive relief.
The Court should not be called upon to weld together two
business entities which have shown a propensity for
disagreement, friction, and even adverse litigation.") (emphasis
supplied); Weeks v. Pratt, 43 F.2d 53, 57 (5th Cir. 1930)

(Sibley, J., concurring) (stating that refusal of specific performance should be based on inability of court to supervise parties' contractual relationship); CBL & Assoc., Inc. v. McCrory Corp., 761 F. Supp. 807, 809 (M.D. Ga. 1991) (denying injunction because equity will not order the specific performance of a contract where doing so would require the continuous supervision of the court"); accord The Original Great American Chocolate Chip Cookie Co. v. River Valley Cookies, Ltd., 970 F.2d 273 (7th Cir. 1992) (requiring parties to remain in cooperative relationship by injunction "imposes a continuing duty of supervision on the issuing court, and this can be a drain on scarce judicial resources.  Courts should be and generally are, reluctant to issue 'regulatory' injunctions."); Bethlehem Engineering Export Co. v. Christie, 105 F.2d 933, 935 (2d Cir. 1939) ("[T]he continuance of such an injunction would depend upon continuance of the defendants' obligation to the plaintiff; and the continuance of that obligation would in turn depend upon the plaintiff's continued performance of its duties under the contract."); United Cigarette Mach. Co. v. Winston Cigarette Mach. Co., 194 F. 947, 958 (4th Cir. 1912) ("[A]n injunction will not be issued to restrain a breach of a long term contract" because "an injunction to prevent breaches of contract is frequently a negative enforcement of specific performance") (citing cases from other federal jurisdictions for

support) (emphasis supplied); <u>Berliner Gramophone Co. v. Seaman</u>,
110 F. 30, 34 (4th Cir. 1901) (if the court were enjoin further
breaches of a contract, it would have to "continue this
supervision, and see to it during the whole existence of the
contract that both parties fulfill their mutual obligations.
This has been repeatedly declared to be outside of the functions
of a court of equity.").

If Plaintiff's theory is correct and it continues to meet
its "quotas," however they are defined, the 1991 Agreement will
remain in effect indefinitely. <u>See</u> Brief in Support of Pak-
Tec's Motion, Ex. E (e-mail stating that Pak-Tec has allegedly
met its Quota for 2002). This would require the Court to
constantly maintain jurisdiction over the parties so that it can
regulate their interactions *ad infinitum*. The imposition of
such a burden on the courts is specifically rejected by the
cases cited above.

As Plaintiff notes, some federal courts are willing to
grant injunctive relief and award specific performance of
contracts despite the foregoing. Plaintiff's supporting
citations involve situations where a simple order will guide the
parties' relationship without constant court supervision,
however. <u>See</u>, e.g., <u>Federal Leasing, Inc. v. The Bank of
California, N.A.</u>, 650 F.2d 495 (4th Cir. 1981) (Fourth Circuit
affirmed an injunction requiring the underwriters of insurance

policies to pay claims that were outstanding to the plaintiff);
Zurn Constructors, Inc. v. The B.F. Goodrich Co., 685 F. Supp.
1172 (D. Kansas 1988) (order to fill current customer orders
subject to injunction); City Stores Co. v. Ammerman, 266 F.
Supp. 766 (D. D.C. 1967) (injunction ordering completion of
construction project granted because requirements set out with
"sufficient particularity" which avoided "insuperable
difficulties of supervision").   These injunctions involve the
performance of specific, limited and well-defined executory
obligations under the contracts at issue; they do not involve
the perpetual supervision of a complex and multi-faceted
contractual relationship.

    The relationship between Imaje USA and Pak-Tec will
necessarily involve "insuperable difficulties of supervision."
Accordingly, this case is governed by Marshall and its progeny
and not by those cases cited by Plaintiff.   For instance, Pak-
Tec claims, *inter alia*, that Defendants breached the 1991
Agreement in the following manner:

    a.  Failing to provide Pak-Tec with field support;
    b.  Failing to provide Pak-Tec with proper training;
    c.  Failing to provide Pak-Tec with discounting
        programs;
    d.  Failing to properly credit Pak-Tec for sales by
        Imaje USA within Pak-Tec's territory;
    e.  Improperly reducing Pak-Tec's margins;
    f.  Improperly charging Pak-Tec for samples;
    g.  Improperly charging Pak-Tec for drop shipments;
    h.  Improperly reducing Pak-Tec's territory;
    i.  Failing to properly credit Pak-Tec for sales by

Pak-Tec outside Pak- Tec's territory;

j.   Improperly charging Pak-Tec for warranty
     payments;

k.   Failing to properly credit, as agreed by Imaje
     USA, Pak-Tec for sales    procured through the
     efforts of Pak-Tec;

l.   Improperly contacting and/or effectuating sales
     with customers within     Pak-Tec's territory;

m.   Improperly charging Pak-Tec for certain freight
     charges;

Complaint ¶ 74.   Imaje USA expressly disputes all of these

claims. Accordingly, if an injunction is issued, the Court will

be required to referee each of Pak-Tec's myriad complaints, both

now, tomorrow, and indefinitely into the future.   Given the

foregoing rationale, Pak-Tec is not entitled to an injunction.

**D.**   **Plaintiff Has Failed To Clearly Prove All Four Parts
         of the Eleventh Circuit Preliminary Injunction Test
         Sufficient to Warrant "Drastic" Injunctive Relief**

In the Eleventh Circuit, a district court may grant an

injunction only if the moving party clearly shows that:

> (1) it has a substantial likelihood of success on
> the merits, (2) the movant will suffer irreparable
> injury unless the injunction is issued, (3) the
> threatened injury to the movant outweighs the
> possible injury that the injunction may cause the
> opposing party, and (4) if issued, the injunction
> would not disserve the public interest.   Siegel v.
> Lepore, 234 F.3d 1163, 1176 (11th Cir. 2000). It is
> well-established in this Circuit that "[a]
> preliminary injunction is an **extraordinary and
> drastic remedy not to be granted unless the movant
> clearly established the 'burden of persuasion'" as
> to all four elements**. Id. (citing cases).

Horton v. City of St. Augustine, Florida, 272 F.3d 1318,

1326 (11th Cir. 2001) (emphasis added).   Pak-Tec has

failed to clearly prove any of these elements, let alone
all of them.  Accordingly, Pak-Tec's motion should be
denied.

### 1.   **Pak-Tec Will Suffer No Irreparable Injury**

Pak-Tec claims that it is entitled to a preliminary
injunction because it will suffer irreparable harm from the loss
of its customers, goodwill, and reputation.  See Plaintiff's
Brief in Support of Motion at 9.  Pak-Tec relies on inapposite
Eleventh Circuit cases to contend that this harm is not
quantifiable, and that, as a result, it is entitled to
injunctive relief.  This contention is in error.

Plaintiff's alleged harm falls into two categories:  (a)
the actual harm that Plaintiff has quantified in its Complaint,
and for which Plaintiff has an adequate remedy at law, and (b)
Plaintiff's broad and unsubstantiated allegations of irreparable
harm to its "opportunities" that are contradicted by Plaintiff's
own evidence.

As to the first category, Pak-Tec is not entitled to an
injunction if it has an adequate remedy at law for its injuries.
See FOGADE v. ENB Revocable Trust, 263 F.3d 1274, 1281 (11th
Cir. 2001).  Pak-Tec claims that it does not have an adequate
remedy at law because its damages are not capable of being
measured.  See Brief at 10.  But Pak-Tec has already calculated
the measure of its damages for the Court.  Pak-Tec's Complaint

17

and Brief in Support of its Motion both state that Pak-Tec expects to have to lay off 25% of its work force, and expects to lose 59% of its revenue. See Complaint ¶¶ 53-54; Brief at 12. Both of these measures are readily calculable based on Pak-Tec's past revenues and financial performance.

As to the second category, to the extent that Pak-Tec claims that there are other damages that it expects to incur that cannot be measured, Pak-Tec has failed to offer any evidence to support this contention. Pak-Tec states that it will "necessarily lose the goodwill that it has strived to develop . . . ." Complaint ¶ 55. Pak-Tec defines "goodwill" as its expected loss of its ability to acquire new business based on its positive relationships with current customers. See Brief in Support of Motion at 9. However, Pak-Tec has offered absolutely no evidence that it will lose future business due to the termination of its at-will relationship.

Even if this Court finds that Pak-Tec has demonstrated that it will lose goodwill from the termination of the at-will relationship, Pak-Tec has not shown that its goodwill—as Pak-Tec defines that term—is incapable of being measured. Federal and state courts, damages experts, and companies seeking to purchase purchasing other companies routinely assess the value of a company's goodwill. See, e.g., In re: American Honda Motor Co., 315 F.3d 417, 435 (4th Cir. 2003) (noting that the district

18

court calculated the value of goodwill); <u>Trimed, Inc. v.</u>
<u>Sherwood Medical Co.</u>, 977 F.2d 885, 893 (4th Cir. 1992)
(reviewing the calculation of damages by damages expert that
included measuring of goodwill).

Given the foregoing, Plaintiff has failed to establish that
it will suffer irreparable harm, or to substantiate that its
alleged injuries cannot be remedied at law.

### 2.   **Imaje USA Will Suffer Substantial Irreparable Injury If Injunction Issues And The Status Quo Will Be Substantially Altered**

In contrast, Imaje USA stands to suffer irreparable and
potentially devastating harm in being forced to maintain an
**expired** contract with a distributor in a fashion that Imaje USA
no longer believes gives the best value and service to its
customers.  <u>See</u> Ex. H to Plaintiff's Motion (Letter to Pak-Tec
customer).  Further, Imaje USA will never be able to recoup the
$182,000.00 it has expended in effectuating the transition from
Pak-Tec distribution to direct distribution of Imaje products.
Imaje USA will also be forced to breach orders that it has taken
from customers since May 6, 2003.

Forcing Imaje USA to begin dealing with Pak-Tec again will
not only fail to enforce the status quo, it will disrupt it.  As
is described throughout this brief, the 1991 Agreement that Pak-
Tec seeks to sustain expired in 1996 and the parties' at will
relationship terminated on May 6, 2003.   The status quo now

consists of, among other things, (a) Imaje USA distributing its
new stock of products directly to those customers that placed
orders with Imaje USA on or after May 6, 2003 and (b) the
continued employment of those sales persons and technicians that
Imaje USA has hired and trained since March 12, 2003.  The
status quo does not consist of a business relationship between
Imaje USA and Pak-Tec.  Pak-Tec sat on any rights it might have
had and permitted the status quo to change substantially since
March 6, 2003.  Accordingly, an injunction in this matter will
not only harm Imaje USA substantially and irreparably, it will
substantially alter the status quo.  Accordingly, an injunction
should not issue.

### 3.   **Pak-Tec Cannot Prove That It Will Succeed on the Merits of Its Claims**

Pak-Tec is unlikely to succeed on the merits of its
contract claims against Imaje USA, because Pak-Tec's breach of
contract claim, which is the sole basis for its Motion for
Temporary Restraining Order and Preliminary Injunction, stems
from Pak-Tec's reliance on the 1991 Agreement.  The 1991
Agreement is no longer enforceable, because its terms have
expired.  See Section II, supra.

Pak-Tec claims that 1991 Agreement's express termination
provisions mean that the 1991 Agreement could not become
terminable at will.  See Brief in Support of Motion at 21-22

However, those termination provisions **expired** in 1996 once the
1991 Agreement's terms no longer provided for Plaintiff's annual
quotas. See supra at Part II; 1991 Agreement at ¶ 19 and Ex. D
(the agreement was to be extended for three years only if the
quotas explicitly set forth in Exhibit D (which covered only
years 1991, 1992 and 1993) to Complaint were met; because the
agreement contained no quotas other than for these years, and
because the 1991 Agreement explicitly requires the quotas "in
Exhibit D" to be met, the contract cannot logically extend past
1996. Pak-Tec's tortured suggestion to the contrary ignores the
plain language of the 1991 Agreement.[4]

Moreover, to the extent that Pak-Tec claims that an August
2002 e-mail from Imaje USA suggested that the 1991 Agreement
remained in effect, Pak-Tec ignores the fact that no such e-mail
could, by the terms of that same 1991 Agreement, extend the 1991
Agreement's life beyond 1996 absent a separate executed written
amendment between the parties. See 1991 Agreement, ¶ 20 ("This
Agreement and attached exhibits contain the entire understanding

---

[4]    Pak-Tec suggests that although the contract is clear, Imaje
USA's interpretation of it does not comport with the
"intent" of the 1991 Agreement. See Pak-Tec Brief at 19-20.
Pak-Tec fails to recognize that a court will discern the
parties' intent from the contract itself when the contract
is clear. See Thomas v. American Global Ins. Co., 229 Ga.
App. 107, 109 (1997). The intent of the 1991 Agreement,
from its clear terms, is that it terminated in 1996 at the
latest. The parol evidence submitted by Pak-Tec cannot be
used to contradict these clear terms. See id.

of the parties hereto with respect to the subject matter
contained herein.  The parties may modify, vary or alter the
provisions of this Agreement only by an instrument in writing
duly executed by an authorized representative of both
parties.").

Because Plaintiffs do not have a substantial likelihood of
success in proving that the 1991 Agreement is still in force,
Plaintiff's motion should be denied. See Hatian Refugee Center,
Inc. v. Christopher, 43 F.3d 1431 (11th Cir. 1995) ("The
requesting party's failure to demonstrate a substantial
likelihood of success on the merits may defeat the party's
claim, regardless of its ability to establish any of the other
elements.").

### 4.   Injunction Would Violate Public Interest

This is a straight-forward contract case that does not
implicate broad public interests.  In fact, the public interest
would be harmed by the entry of an injunction involuntarily
forcing Image USA into Plaintiff's servitude.

### E.   Plaintiff Should Be Required to Post a Bond

In the event that this Court awards Plaintiff injunctive
relief, Plaintiff respectfully requests that this Court order
Plaintiff to place into the registry of the Court a bond in
accord with Federal Rule of Civil Procedure 65(c).

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction should be denied.

Respectfully submitted this 12th day of May, 2003.

Cary Ichter
Georgia Bar No. 382515
T. Joshua R. Archer
Georgia Bar No. 021208
Christopher S. Anulewicz
Georgia Bar No. 020914
Alexandra E. Chopin
Georgia Bar No. 124978

**MEADOWS, ICHTER & BOWERS, P.C.**
Fourteen Piedmont Center,
Suite 1100
3535 Piedmont Road
Atlanta, GA  30305
(404) 261-6020

ATTORNEYS FOR DEFENDANTS

## CERTIFICATE OF COUNSEL REGARDING FONT SIZE

Counsel for Defendants certifies that the foregoing has been prepared using Courier New font size 12 in accordance with Local Rules 5.1(B)(3) and 7.1(D).

This 12th day of May, 2003.

Alexandra E. Chopin
Georgia Bar No. 124978

24

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the within and foregoing was deposited in the United States Mail, with adequate postage affixed as addressed below, and sent by facsimile, as follows:

> William H. Boice
> Stephen E. Hudson
> Kilpatrick Stockton, LLP
> 1100 Peachtree Street, Suite 2800
> Atlanta, Georgia 30309
> Fax No. (404) 815-6555
>
> Kurt E. Lindquist, II
> C. Marshall Lindsay
> Kilpatrick Stockton, LLP
> 301 South College Street, Suite 3500
> Charlotte, North Carolina 28202
> Fax No. (704) 338-5125

This 12th day of May, 2003.

Alexandra E. Chopin
Georgia Bar No. 124978