IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

PAK-TEC, INC., a North Carolina
corporation,

   Plaintiff,

     v.

IMAJE INK JET PRINTING
CORPORATION, a
Georgia corporation, et al.,

   Defendants.

CIVIL ACTION FILE
NO. 1:03-CV-1249-TWT

ORDER AND OPINION

This is an action for breach of contract. It is before the Court on the Defendant Imaje Ink Jet Printing Corp.'s Motion for Judgment on the Pleadings on the Plaintiff's Alter-Ego Claim [Doc. 130]. For the reasons set forth below, the Defendant's motion is GRANTED.

I. BACKGROUND

Defendant Imaje S.A. ("Imaje France") is a French corporation engaged in the manufacture and export of continuous ink jet products, accessories and fluids ("CIJ Products"). These CIJ Products are used to mark or otherwise identify products produced in a wide range of industries. CIJ Products manufactured by Imaje France

employ a system whereby special inks are expressed through a printer device to mark and identify plastic products according to customers' specifications. Defendant Imaje Ink Jet Printing Corporation n/k/a Imaje USA ("Imaje USA") was incorporated in Georgia in 1987. Imaje USA is a wholly-owned subsidiary of Imaje France. Since 1987, Imaje USA has imported into the United States and sold Imaje France's CIJ Products throughout the United States.

Plaintiff Pak-Tec, Inc. ("Pak-Tec") is a North Carolina corporation engaged in the distribution of industrial products relating to the packing industry. In July 1991, Pak-Tec and Imaje USA entered into an agreement for the exclusive distribution, sale, installation, and service of Imaje's CIJ Products in certain southern states (the "Agreement"). The Agreement contained a complicated formula governing the term and termination of the relationship between Pak-Tec and Imaje USA. In late 2002, representatives of Imaje USA and Imaje France informed Pak-Tec that Imaje USA intended to terminate all distributors of Imaje CIJ Products. On March 5, 2003, the Chief Financial Officer of Imaje France, Hervé Claret, gave Pak-Tec oral notification by telephone that Imaje USA and Imaje France intended to terminate the 1991 Agreement, effective in ninety days. On March 7, 2003, Pak-Tec received a letter from Imaje USA's General Manager, Jacques Desroches, indicating that Imaje USA would terminate its relationship with Pak-Tec on May 5, 2003.

On April 30, 2003, Plaintiff Pak-Tec notified Imaje USA that it objected to the dissolution of the Agreement. It filed a Motion for Temporary Restraining Order and Preliminary Injunction in the United States District Court for the Western District of North Carolina. The 1991 Agreement, however, contained a forum selection clause requiring that the case be brought in the state of the Defendant's jurisdiction. (Compl., Ex. D.) The District Court in North Carolina thus dismissed the action.

On May 8, 2003, the Plaintiff filed this action, naming both Imaje USA and Imaje France as Defendants. The Plaintiff claims that Imaje USA is merely the alter-ego of its parent, Imaje France. The Plaintiff thus contends that the two corporations should be held jointly and severally liable under the Agreement. Imaje France moves for judgment on the pleadings on the Plaintiff's alter-ego claim.

## II.  JUDGMENT ON THE PLEADINGS STANDARD

Judgment on the pleadings is appropriate when there are no material facts in dispute, and judgment may be rendered by considering the substance of the pleadings and any judicially noticed facts. Hawthorne v. Mac Adjustment, Inc., 140 F.3d 1367, 1370 (11th Cir. 1998). The Court must accept the facts in the complaint as true and view them in the light most favorable to the nonmoving party. Id.

### III. DISCUSSION

The Plaintiff seeks to pierce the corporate veil and hold the parent, Imaje France, liable for a contract entered into by its subsidiary, Imaje USA. Under Georgia law, a parent corporation is distinct from and maintains a separate identity from its subsidiary, provided that corporate forms are maintained. See Worsham v. Provident Cos., Inc., 249 F. Supp. 2d 1325, 1340-41 (N.D. Ga. 2002); Boafo v. Hospital Corp. of Am., 177 Ga. App. 75, 76-77 (1985). Disregarding the corporate entity and piercing the corporate veil is an exercise that the court should enter into only with great caution. Hickman v. Hyzer, 261 Ga. 38, 39 (1991). The Court will do so, however, "where the corporation has overextended its privileges in the use of the corporate entity to defeat justice, to perpetuate fraud, or to evade statutory, contractual or tort responsibility." Id. (quotations omitted).

To prove that one entity is merely the alter-ego of another, courts applying the laws of this jurisdiction differ as to what must be shown. Some require a two-pronged showing that: "[1] the subsidiary . . . be a mere instrumentality of the parent, so that the separate personalities of the corporation and the owners no longer exist; and [2] to adhere to the doctrine of corporate entity would promote injustice or protect fraud." Brown v. Advantage Eng'g, Inc., 732 F. Supp. 1163, 1167 (N.D. Ga. 1990) (internal punctuation and quotations omitted); Najran Co. for Gen. Contracting & Trading v.

Fleetwood Enters., Inc., 659 F. Supp. 1081, 1095 (S.D. Ga. 1986); Florida Shade Tobacco Growers, Inc. v. Duncan, 150 Ga. App. 34, 34-35 (1979).[1]  Others have adopted a totality of the circumstances approach and consider a "non-exhaustive list" of factors in determining whether alter-ego liability should apply.  See Manhattan Constr. Co. v. K&E Constr. Co., Inc., No. 1:80-CV-1258, 1988 WL 150690, at *6 (N.D. Ga. Dec. 12, 1988) (examining factors such as commingling of finances, siphoning of corporate funds for personal debts, failure to hold director and shareholder meetings, and failure to maintain corporate records); In re Chicken Antitrust Litigation, 560 F. Supp. 1006  (N.D. Ga. 1982) (citing a list of eleven factors that may be considered in deciding "whether to disregard the corporate status of a subsidiary").  However, "the issue should not be submitted to a jury where there is no evidence that [the corporation] was a sham, or that it was used to defeat a public convenience, to justify wrong, protect fraud, defend crime, or any other reason which in equity and good conscience would justify the disregard of its separate entity." Williams Plaza, Inc. v. Sedgefield Sportswear Div. of Blue Bell, Inc., 164 Ga. App.

---

[1]Even among the courts applying this multi-pronged approach there is a dispute as to whether the first prong requires a showing of abuse of the corporate form. Brown, 732 F. Supp. at 1167.  See, e.g., Baillie Lumber Co. v. Thompson, 279 Ga. 288, 290 (2005) (holding that abuse must be shown); Heaton v. Home Transp. Co., 659 F. Supp. 27, 33 (N.D. Ga. 1986) (granting summary judgment without any showing of abuse).

720, 721 (1982) (quotations omitted); Florida Shade Tobacco Growers, Inc., 150 Ga. App. at 35.

Here, the Plaintiff's claim of alter-ego liability fails because the Plaintiff did allege, that Imaje USA was a sham corporation used by its parent to promote a fraud or other illegality. The Plaintiff has asserted that Imaje France so controlled and dominated Imaje USA as to make the two corporations essentially one in the same. (Compl., ¶ 11) Yet, the Plaintiff points only to the fact that Imaje France initially negotiated with the Plaintiff, responded to the Plaintiff's concerns about the Agreement, and gave notice of its decision to terminate the Agreement. (Compl. ¶¶ 8, 23, 43-44, 46). At most, this proves that Imaje France exercised some degree of control over Imaje USA's operations. Even showing a party owns and controls a corporation for personal ends, however, does not demonstrate an abuse of the corporate entity. See United States v. Fidelity Capital Corp., 920 F.2d 827, 837 (1991). To adequately prove alter-ego liability, this simply is not enough. The Plaintiff must allege facts sufficient to show that recognizing Imaje USA as a separate entity would be allowing an injustice. Baillie Lumber Co. v. Thompson, 279 Ga. 288, 289 (2005). Because the Plaintiff has failed to do so, this Court holds that a judgment on the pleadings is merited.

## IV. CONCLUSION

For the reasons set forth above, the Defendant Imaje Ink Jet Printing Corp.'s Motion for Judgment on the Pleadings as to Alter-Ego Claim [Doc. 130] is GRANTED.

SO ORDERED, this 20 day of October, 2005.

/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge